**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**


MICHAEL J. FEGANS
ADC #079097                                                                          PETITIONER


VS.                                  4:04CV00335 SWW/JTR


UNITED STATES OF AMERICA;
UNITED STATES BUREAU OF PRISONS; and
HARLEY G. LAPPIN, Director,
United States Bureau of Prisons                                    RESPONDENTS


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan

Webber Wright.   Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.  If the

objection is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  An original and one copy of your objections must be received in the office of the United

States District Clerk no later than eleven (11) days from the date of the findings and

recommendations.   The copy will be furnished to the opposing party.    Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the United States District Judge,

you must, at the same time that you file your written objections, include a "Statement of Necessity"

that sets forth the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3.     An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

## I. Introduction

Pending before the Court is Petitioner's § 2241 habeas Petition, which was originally filed in the United States District Court for the Western District of Arkansas on February 20, 2004.[1] (Docket entry #1 at Western District docket entry #107.)  On February 27, 2004, United States District Judge Robert T. Dawson entered an Order (W.D. docket entry #108) transferring this case to the Eastern District of Arkansas, the jurisdiction in which Petitioner was incarcerated at the time

---

[1]All of the cited Western District pleadings in this case are attached to Petitioner's habeas Petition (Eastern District docket entry #1).   In this Proposed Findings and Recommended Disposition, the Court will cite all Western District pleadings as  "W.D. docket entry #____."  To locate these Western District pleadings, see the corresponding attachments to Eastern District docket entry #1.

he commenced this action.[2]

The events giving rise to this habeas action occurred in the summer and fall of 1991 and involve complex facts which have been difficult to reconstruct given the passage of over a decade; the death of United States District Judge Oren Harris, who presided over Petitioner's federal sentencing;[3] and the understandably vague memories of several of the participants in Petitioner's sentencing.  The procedural history of this case is also complex, as it has wound its way from the Western District of Arkansas to the Eighth Circuit Court of Appeals, back to the Western District of Arkansas, and, finally, to the Eastern District of Arkansas.  Nevertheless, in order to understand the merits of Petitioner's habeas claims, it is necessary to review both the facts giving rise to those claims and the procedural history of this case.

On July 1, 1991, Petitioner was arrested by Garland County law enforcement authorities on state charges and detained in the Garland County Jail.[4]  (W.D. docket entry #31, Ex. A.)  Although a state court judge set a bond for Petitioner, he was unable to meet it and remained in jail as a state pretrial detainee.  (Docket entry #22, ¶ 25.)

On July 7, 1991, Petitioner advised local law enforcement authorities that he wanted to provide a statement concerning his involvement in a June 7, 1991 bank robbery.  This bank robbery

_____

[2]Since initiating this action, it appears Plaintiff has been incarcerated primarily in the Varner Super Max Unit of the Arkansas Department of Correction ("ADC").

[3]Judge Harris sentenced Petitioner on November 4, 1991, and died some five years later, on February 5, 1997.

[4]Petitioner later pled guilty and was sentenced on state charges of aggravated robbery, second-degree battery, and attempted first-degree escape.  (Docket entry #9, Attachment 4.)  Some of those charges were added after Petitioner attempted to escape from the Garland County Jail.  (Docket entry #9, Ex. 4.)  Thus, it is difficult to determine which of those state charges led to Petitioner's arrest on July 1, 1991.

was *unrelated* to the state charges pending against Petitioner.  (W.D. docket entry #31, Ex. A.)  On July 7, 1991, Garland County law enforcement authorities contacted the FBI, and, a short time later, Petitioner gave a statement to the FBI confessing to the June 7, 1991 bank robbery.  (W.D. docket entry #11, Ex. A.)

On July 30, 1991, Petitioner was indicted by the Grand Jury for the Hot Springs Division of the Western District of Arkansas.  The federal indictment charged Petitioner with one count of bank robbery using a dangerous weapon, in violation of 18 U.S.C. §§ 2113(a) and (d).  (W.D. docket entry #1.)

On August 1, 1991, United States Magistrate Judge Beverly Stites signed a Writ of Habeas Corpus *Ad Prosequendum*, directing "the Sheriff, Garland County Jail, Hot Springs, Arkansas," to bring Petitioner, "[who was] detained under your [the Sheriff's] custody" to the United States District Court in Hot Springs at 11:00 a.m. on August 13, 1991, "in order that he may be present for proceedings on charges now pending against him; after all proceedings against the said defendant [Petitioner] have been concluded in said Court that he be returned to the Garland County Jail, Hot Springs, Arkansas, under safe and secure conduct, and have you then and there this writ."  The purpose of this Writ was to bring Petitioner into federal court for his Plea and Arraignment on the bank robbery charges. On August 13, 1991, Petitioner appeared in United States District Court for the Western District of Arkansas, pursuant to the Writ of Habeas Corpus *Ad Prosequendum* (docket entry #9, attachment 2) and entered a not guilty plea.

Importantly, the language in the August 1, 1991 Writ makes it clear that, after Petitioner appeared for his Plea and Arraignment on August 13, 1991, he was to remain in federal custody until "*all proceedings against the said defendant have been concluded in said [federal] court . . . .*"

-4-

On September 18, 1991, Petitioner appeared before Judge Harris and changed his plea to "guilty" on the bank robbery charge.  (Plea hearing Tr. 5.)  On November 4, 1991, Petitioner again appeared before Judge Harris for sentencing.  There is nothing in the record suggesting that new writs of habeas corpus *ad prosequendum* were issued for Petitioner in connection with either of those appearances before Judge Harris.  The absence of subsequent writs is strong evidence that, from the time Petitioner appeared for his August 13, 1991 Plea and Arraignment, until "all proceedings against him in federal court were concluded" (*i.e.*, the indictment was dismissed, Petitioner was acquitted, or Petitioner pled guilty and was sentenced), he was a federal prisoner.[5]  Finally, the explicit language of the August 1, 1991 Writ provided that, after *all* federal proceedings were concluded, Petitioner was to be returned by the Marshals Service to the custody of the Garland County Sheriff, to await the disposition of the state criminal charges pending against him.  Thus, after his Plea and Arraignment on August 13, 1991, Petitioner was considered to be a *federal pretrial detainee* until his November 4, 1991 federal sentencing, at which time "all proceedings" against him in United States District Court were concluded.  Pursuant to the August 1, 1991 Writ, the United States Marshals Service then was obligated to return Petitioner to the custody of the Garland County Sheriff.

In Petitioner's federal presentence report, written by United States Probation Officer Jane Ann Mays ("Ms. Mays"), she stated that she was "convinced that [Petitioner] entered a plea of guilty

---

[5] Testimony from AUSA Mark Webb, at Petitioner's June 3, 2002 *coram nobis* hearing, established that the United States Marshals Service in Hot Springs had a contract with the Garland County Jail to house federal prisoners.  The tapes of that *coram nobis* hearing have been made a part of this record. (Docket entry #28.)  Additionally, United States Deputy Marshal Edwin Outlaw testified at Petitioner's sentencing hearing on November 4, 1991, that, while Petitioner was a "federal prisoner" in the Garland County Jail, he had attempted to escape.  (Sent. Tr. 18-19.)

to Federal Charges to avoid numerous outstanding State Charges pending in Garland County Circuit Court." For that reason, she recommended against Petitioner receiving the two-point deduction called for under the Federal Sentencing Guidelines (the "Guidelines") for accepting responsibility by pleading guilty.

During his sentencing, Petitioner testified that he accepted responsibility for his crime. (Sent. Tr. 14.)  When asked by his Court appointed attorney, Dan Becker, if he was pleading guilty to the federal charge in hopes of having the state charges dismissed, Petitioner answered: "No, sir.  Those charges are not dismissed."  (Sent. Tr. 14.)  On cross-examination, Petitioner and the Assistant United States Attorney ("AUSA") engaged in the following colloquy:

> AUSA:  Do you know whether or not on your behalf [your state court defense counsel has] negotiated some agreement with the local prosecutor as to how those [state] charges are going to be disposed of?
>
> PETITIONER:  There have been talks.  To my understanding and knowledge they haven't come to any conclusion on it.  It has just been – She's told me that they have talked about a plea agreement.  This is after I, you know, accepted the plea and I went and gave the voluntary statement.
>
> AUSA:  Do you know what the talk has been about?  What the disposition of those charges would be, according to this talk?
>
> PETITIONER:  Yes, sir.  They said it would run concurrent with whatever sentence I receive in this court.

(Sent. Tr. 14-15.)

Ms. Mays offered the following testimony explaining why she declined to recommend a two point deduction for acceptance of responsibility:

> AUSA:  Ms. Mays, do you have any personal knowledge as to the planned disposition of those state court charges?

MAYS:  What I – I believe that they have told [Petitioner], or I've heard that they were going to run it concurrent with the federal charges.

(Sent. Tr. 23.)  On cross examination, Petitioner's attorney questioned Ms. Mays about the status of the pending state charges:

DEFENSE COUNSEL:  [Petitioner] talked about a proposed deal that they have in the state court.  Where'd you get that information from?

MAYS:  I have just – I'm not even sure who's told me.  That's just what I've heard.  I've not talked to the prosecuting attorney.

* * *

DEFENSE COUNSEL:  Is there any indication [in the state court records] of that agreement?

MAYS:  No.

DEFENSE COUNSEL:  Have you discussed with [Petitioner's state court defense counsel] any proposed disposition?

MAYS:  No.

* * *

MAYS:  That's just what I believe; that when [Petitioner] entered a plea in this court and would be sentenced that the state charges either will be dropped or will run concurrent, is what I feel that's what was going to happen.

DEFENSE COUNSEL:  Have you verified that they would be dropped?

MAYS:  No, I have not.

DEFENSE COUNSEL:  Have you verified that they would run concurrent?

MAYS:  No, I have not.

(Sent. Tr. 25-26.)

Judge Harris then examined Ms. Mays concerning whether, under the sentencing Guidelines,

the mere fact of a guilty plea would entitle a defendant to a 2-point deduction for acceptance of

responsibility:

> THE COURT:  Well, do I get from this record that you refer to about what [Petitioner] is entitled to or not entitled to is what you have drawn from your conclusion or investigating; that the [Petitioner] does not really – Does not really help himself in that regard because what he's doing is to try to get the state and federal charges disposed of all at one time?
>
> MS. MAYS:  That's one reason, yes, sir.  I believe that it takes more than coming up here and pleading guilty to get the acceptance of responsibility.  I believe he did that to get the state charges dropped or run concurrent.

(Sent Tr. 28.)

Ms. Hays' supervisor in the Probation Office, Donald Williams, also testified regarding

whether Petitioner should be given credit for "accepting responsibility":

> DEFENSE COUNSEL:  And did Ms. Mays tell you that she was under the impression that [Petitioner] pled guilty only to have the state charges dismissed?
>
> WILLIAMS:  We were both convinced of that.
>
> DEFENSE COUNSEL:  Based on what?
>
> WILLIAMS:  Not to have state charges dismissed, but to have state charges run concurrent with this federal sentence.
>
> DEFENSE COUNSEL:  Did the prosecutor advise you of that?
>
> WILLIAMS:  I believe that was the total agreement that came with the case when he came.
>
> DEFENSE COUNSEL:  Do you have anything in writing indicating –
>
> WILLIAMS: I know – I have nothing in writing, but it was understood that in return for [Petitioner's] plea of guilty in this case that those state cases would be nol prossed or run concurrent.  That was the impression that we got.

* * *

WILLIAMS:  The FBI agent handling the case told me the state charges pending against [Petitioner] would either be – Run concurrent or nol prossed.

DEFENSE COUNSEL:  And when was this told to you?

WILLIAMS:  It's been told to me on at least two or three occasions by Agent Ross, that that was an understanding.  The police department, they had this guy in jail on several charges, looking at him for several charges.  He was wanting to talk about a bank robbery in lieu of the state charges.  And Mr. Ross went to him, and he gave him a statement.

DEFENSE COUNSEL:  State charges are still pending against [Petitioner]?

WILLIAMS:  Yes, a number of them.

DEFENSE COUNSEL:  And to your knowledge . . . there is no agreement to drop those charges, is there?

WILLIAMS:  That's correct.

(Sent Tr. 36-37.)

After considering all of the testimony, Judge Harris denied Petitioner's request for a two point deduction for acceptance of responsibility because "the record is overwhelming; that according to the guidelines as presented to the Court that [Petitioner] would not be entitled to a reduction in the total offense level as he had requested." (Sent. Tr. 38.) Before announcing Petitioner's sentence, Judge Harris again commented on Petitioner's motivation in cooperating with federal authorities:

Naturally, I cannot help but having a great deal of sympathy for you, Mr. Fegans.  I am convinced that after you finally admitted and have made up your mind that you wanted to cooperate in getting this matter straightened out, that the fact that you had federal charges pending against you and state charges against you and you could very likely dispose of both of them at the same time, an all-powerful reason for you cooperating, as you have indicated you did cooperate at the particular time in the matter.

(Sent. Tr. 42.)  Petitioner was then sentenced to 125 months' incarceration in the BOP, to be

followed by 4 years of supervised release.[6]  (Docket entry #9, Attachment 1.)  Although Petitioner

filed a notice of appeal of his federal sentence, he later dismissed the appeal on his own motion.

Importantly, at the time Judge Harris entered the November 4, 1991 Judgment and

Commitment Order, there had been *no resolution* of the pending state criminal charges against

Petitioner in Garland County.  Therefore, the Judgment and Commitment Order is *silent* on whether

Petitioner's federal sentence is to run consecutive or concurrent to any other sentence.

On November 4, 1991, shortly after Petitioner's sentencing, the United States Marshals

Service  released its writ of habeas corpus *ad prosequendum* and returned Petitioner to the custody

of the Garland County Sheriff to await the disposition of the pending state criminal charges.

Petitioner's return to state custody, following his federal sentencing, is documented by the following

handwritten note: "Per Marshals Office Western District Writ is released, returned to state custody

on pending Circuit Court charges.  Capt. Lacey 11/4/91."  (Docket entry #9, Attachment 3.)  This

handwritten note appears at the bottom of an August 5, 1991 memo from United States Marshal J.

---

[6]On November 19, 1991, Judge Harris entered Findings of Fact in connection with
Petitioner's sentencing.  In those findings, Judge Harris elaborated on the reasons he denied
Petitioner a 2-point deduction for acceptance of responsibility:

1.  Defendant confessed to the bank robbery after being held on other, unrelated
[state] charges.  This confession came one month after the crime, and six days after
the incarceration on the other [state] charges.  The defendant's confession was not
made in a timely fashion.  The fact that defendant was in custody before making the
confession shows that he did not voluntarily surrender to authorities.

2.  Defendant testified that he understood there to be a plea agreement on the other
charges to run concurrent with this bank robbery charge.  This action demonstrates
that defendant's outstanding state charges were a factor in his confession, not that he
accepted responsibility for his actions and expected a deserving punishment.

(W.D. docket entry #31, Ex. A.)

C. Patterson to the Sheriff of Garland County advising him of the August 1, 1991 Writ of Habeas Corpus *Ad Prosequendum* for Petitioner.

On December 12, 1991, Petitioner pled guilty in Garland County Circuit Court to aggravated robbery, second-degree battery, and attempted first-degree escape.  (Docket entry #9, Attachment 4.)  For the aggravated robbery conviction, Petitioner received a 40-year sentence (with 30 years suspended), to be followed by a consecutive sentence of eight years for the battery and attempted escape convictions.[7]  (Docket entry #9, Ex. 4.)  The "explanatory notes" section of the aggravated robbery Judgment and Commitment Order states that "each count [is] to run concurrent & concurrent with [the] Federal sentence."  (Docket entry #9, Ex. 4.)  Thus, the state court judge clearly intended for Petitioner's combined eighteen-year state sentence to run *concurrent* with Petitioner's ten-year and five-month federal sentence imposed by Judge Harris on November 4, 1991.

On December 20, 1991, the Garland County Sheriff delivered Petitioner to the ADC to begin serving his state sentence.  (Docket entry #9, Attachment 4.)  A federal detainer was later lodged against Petitioner based on Judge Harris's Judgment and Commitment Order.  (Docket entry #9 at p. 4.)  Sometime in May of 2006, after serving over fourteen years in the ADC, Petitioner is scheduled to complete his state sentence and then begin serving his ten-year and five-month federal sentence in the BOP.

Although it is not clear when or how Petitioner became aware of the federal detainer, on March 27, 2000, he requested the BOP to designate his federal sentence as running concurrent with

---

[7]  The two 8-year sentences for the battery and attempted escape convictions were ordered to run concurrent with each other, but consecutive to the aggravated robbery sentence.  Thus, Petitioner was facing an eighteen-year sentence in the ADC.

his state sentence, on a *nunc pro tunc* basis.[8]  Petitioner based this request on "the agreement that was entered between the AUSA and myself." (Docket entry #9, Attachment 6.)   If this request had been granted by the BOP, it would have had the effect of making Petitioner's state and federal sentences concurrent.  However, on July 5, 2000, the BOP denied Petitioner's request, under 18 U.S.C. § 3621 and BOP Program Statement 5160.03, on the ground that a "concurrent designation" would not be "consistent with the goals of the criminal justice system." (Docket entry #9, Attachment 7.)

On April 23, 2001, Petitioner filed a Petition for a Writ of Error *Coram Nobis* in the Western District of Arkansas.  In this pleading, he claimed that, in exchange for pleading guilty to the federal bank robbery charge, the AUSA had promised him that his federal sentence would run concurrent with the yet to be imposed state sentence.  (W.D. docket entry #30.)  Petitioner requested an injunction ordering the AUSA "to fulfill the terms of the plea agreement by filing the appropriate action to render [Petitioner's] sentences concurrent from November 4, 1991." (W.D. docket entry #30.)

On June 3, 2002, United States Magistrate Judge Bobby E. Shepherd held a hearing on the petition.[9]  Petitioner testified that he was told by his attorney, Mr. Becker, that both the State and the Government had agreed to concurrent sentences, but that Petitioner had to be sentenced in federal

---

[8]Courts and the BOP sometimes refer to such a request for a concurrent designation of a federal sentence as simply a request for "*nunc pro tunc* designation."

[9] Although Petitioner appealed the denial of *coram nobis* relief, he did not request a transcript of the *coram nobis* hearing.  However, Judge Shepherd did a very thorough job of summarizing the testimony of the witnesses in his September 27, 2002 Recommended Disposition denying *coram nobis* relief.  (W.D. docket entry #73 at 5-10.)  The Court has now obtained the audio tapes of the *coram nobis* hearing and listened to the entire proceeding.  The taped testimony is consistent with Judge Shepherd's recitation of the testimony in his Recommended Disposition.

court *first* in order for the sentences to be concurrent.[10]  Petitioner also testified that an AUSA came

to his holding cell and agreed that the federal sentence would be concurrent with any state sentence

he received.  Petitioner added that, during an off-the-record discussion at his change-of-plea hearing

on September 18, 1991, Judge Harris, the AUSA, and Mr. Becker discussed the fact that the federal

sentence would be concurrent with any yet-to-be-imposed state sentence.  Petitioner explained that,

when he testified at his federal sentencing hearing that he entered a plea "to get all of this over with,"

he meant that he entered a guilty plea in order to receive a federal sentence that would be concurrent

with any sentence he might receive on the pending state charges and that he would not have entered

a plea without such an understanding.  Finally, Petitioner testified that he was not aware that he

would be required to serve his state sentence first.

Petitioner's state court defense counsel, Ms. Terri Harris, testified that she understood

Petitioner would receive concurrent federal and state sentences and that he did not receive the benefit

of his bargain.  She testified that, in a typical case, the defendant would go to federal prison first and

receive credit against the state sentence, but acknowledged that, from time to time, there had been

problems regarding concurrent and consecutive sentencing issues involving federal and state

sentences.  According to Ms. Harris, she tries to have her clients sentenced first in federal court if

---

[10]  Petitioner did not call Mr. Becker as a witness at the *coram nobis* hearing.  However, an exhibit to one of Petitioner's earlier *coram nobis* pleadings is a letter from Mr. Becker to Petitioner dated October 20, 1998.  (W.D. docket entry # 31, Ex. A.)  In this letter, Mr. Becker stated that he had no independent recollection of the case, but that portions of the sentencing transcript and Judge Harris' Findings of Fact "supported" Petitioner's contention that the state and federal sentences were to be concurrent.  Although Mr. Becker indicated that his case load precluded his current representation of Petitioner, he recommended that Petitioner file a "petition for relief" in federal court.  Mr. Becker's letter seems to clearly establish that, as early as the fall of 1998, Petitioner was aware that there might be a problem with his federal sentence running concurrent with his state sentence.

they also have unrelated state charges pending against them.  Ms. Harris admitted that she: (1) never spoke with anyone with the United States Attorney's Office regarding Petitioner; (2) was not aware of any agreement with that office; and (3) was not present at any of Petitioner's federal proceedings.

AUSA Mark Webb was assigned to try Petitioner's case.  He did not recall any plea agreement with Petitioner, and stated that, if there had been one, it would have been reduced to writing.  He had no recollection of meeting with Petitioner or the terms of his guilty plea.  His file did contain a letter from Mr. Becker dated September 17, 1991, indicating that Petitioner wished to plead guilty.  Mr. Webb testified that any plea agreement involving concurrent federal and state sentences would have required the approval of the United States Attorney.

AUSA David Ferguson handled Petitioner's change of plea hearing on September 18, 1991. He testified that there were *no discussions* with Petitioner or defense counsel regarding a plea agreement.

AUSA Larry McCord handled Petitioner's federal sentencing hearing on November 4, 1991. He testified that he had no independent recollection of the case or the sentencing, but, after a review of the file, he recalled that United States Probation Officers assigned to the case felt that Petitioner was entering a plea on the federal charge in the hopes that any yet-to-be-imposed state sentence would be concurrent with the federal sentence.  Mr. McCord testified that he had no discussions with Mr. Becker regarding a plea agreement, and that, if there had been one in existence, it would have been in writing and placed in the record.

On September 27, 2002, Judge Shepherd entered a Recommended Disposition finding that: (1) Petitioner did not plead guilty to the federal bank robbery charge based on a plea agreement of any kind; (2) there was no promise or agreement that Petitioner's federal sentence would run

concurrent to any state sentence that might be later imposed; (3) Petitioner's guilty plea in the Western District of Arkansas was not conditioned upon such an understanding; and (4) the federal sentence was imposed with "absolutely no reference" to such an understanding.  (W.D. docket entry #73.)  Thus, Judge Shepherd recommended the denial of *coram nobis* relief, without prejudice to Petitioner's ability to seek § 2241 habeas relief in the district of his incarceration.  United States District Court Judge Robert T. Dawson adopted Judge Shepherd's Recommended Disposition on November 14, 2002 (W.D. docket entry #77), and Petitioner appealed.

On April 25, 2003, the Eighth Circuit summarily affirmed the dismissal of the Petition for a Writ of Error *Coram Nobis* and remanded the case "with directions to allow petitioner a reasonable opportunity to file an amended petition asserting the claim under 28 U.S.C. Section 2241 that is discussed on pages 22-23 of Magistrate Judge Shepherd's Report and Recommendation dated September 27, 2002."  (W.D. docket entry #90.)  *Fegans v. United States* (8th Cir. slip op. April 25, 2003) (No. 03-1195).

On October 23, 2003, Petitioner filed a "Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody in the Western District of Arkansas."  (W.D. docket entry #96.)  In this Motion, Petitioner challenged the BOP's denial of his earlier request to correct his federal sentence to reflect that it was concurrent with his state sentence.  Judge Shepherd entered a Recommended Disposition suggesting that the Petition be denied insofar as it requested relief under § 2255, and dismissal under § 2241 because: (1) Petitioner had not named the proper Respondent; (2) the Western District of Arkansas had no jurisdiction over Petitioner's custodian, because Petitioner was not incarcerated in that District; and (3) the Western District of Arkansas was not the proper venue.  (W.D. docket entry #101.)  While the Recommended Disposition was pending,

Petitioner filed a Motion to Transfer the case to the Eastern District of Arkansas, and an "Amended Motion to Vacate, Set Aside, or Correct Sentence" pursuant to 28 U.S.C. § 2241. (W.D. docket entries #106 and #107.)  On February 27, 2004, Judge Dawson adopted Judge Shepherd's Recommended Disposition, denied Petitioner relief under 28 U.S.C. § 2255, and granted Petitioner's Motion to Transfer his amended §2241 Petition to the Eastern District of Arkansas. (W.D. docket entry #108.)  The transfer of this case to the Eastern District occurred on April 2, 2004. (Docket entry #1.)

Throughout this habeas case, Petitioner has reserved the right to supplement the record with an enhanced audio tape of the September 18, 1991 change-of-plea hearing, during which Petitioner alleges that Judge Harris, the AUSA, and his attorney, Mr. Becker, all agreed Petitioner's federal sentence would be concurrent with any sentence he might later receive on the pending state charges. (Docket entry #1, ¶ 22.)  Respondents agreed that the resolution of this case should be stayed until Petitioner obtained the enhanced audio tape so that the Court could make a determination of whether it shed any new light on the existence of the alleged agreement establishing the allegedly concurrent nature of Petitioner's federal sentence. (Docket entry #23.)  On March 9, 2006, Petitioner filed the enhanced audio tape of the September 18, 1991 change-of-plea hearing before Judge Harris. (Docket entry #24.)

Petitioner's habeas claims are set forth in three separate pleadings: a Petition for a Writ of Habeas Corpus[11] (docket entry #1); an Amended Petition for Writ of Habeas Corpus (docket entry #17); and a Second Amended Petition for a Writ of Habeas Corpus. (Docket entry #22.)  From these

---

[11]  This pleading is actually styled "Amended Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal [sic] and for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241." (Docket entry #1.)

pleadings, the Court has identified three distinct claims for habeas relief: (1) the BOP acted arbitrarily and capriciously in denying Petitioner's request to designate his federal sentence as running concurrent with his state sentence; (2) the United States Marshal acted without authority and in direct violation of Judge Harris's Judgment and Commitment Order in returning Petitioner to state custody after his federal sentencing on November 4, 1991; and (3) Petitioner's federal sentence should be vacated under the United States Supreme Court's holdings in *Booker* and *Blakely*. The Court will analyze each of these arguments separately.

## II. Discussion

### A.   BOP's Allegedly Erroneous Decision Denying Petitioner's Request to Designate His Federal Sentence To Be "Concurrent" With His State Sentence.

According to Petitioner, in denying his March 17, 2000 request for a concurrent designation of his federal sentence, the BOP ignored facts established during his federal sentencing which proved the federal sentence should run concurrent with his state sentence.[12] (Docket entry #9 at Attachments 5 and 7.) The primary "facts" the BOP is alleged to have ignored relate to Judge Harris's decision to deny Petitioner a two-point deduction for accepting responsibility because Judge Harris believed Petitioner was only pleading guilty to the federal bank robbery charge as a way of taking care of the pending state charges. Petitioner *speculates* that this must mean that Judge Harris also believed there

---

[12]Respondents point out that Petitioner has not exhausted BOP administrative remedies associated with its denial of Petitioner's request for a *nunc pro tunc* designation of his federal sentence. However, they go on to concede that, because Petitioner is incarcerated in state prison, BOP's administrative remedy program is *not* available to him. (Docket entry #9.) Thus, Petitioner has exhausted all administrative remedies available to him.

Respondents also contend that the United States of America is not a properly named respondent in this case. While that contention is correct, the other named Respondents are proper parties. Therefore, the Court must still address the merits of Petitioner's claims.

was some form of plea agreement for the state and federal charges to run concurrent.[13]

Under 18 U.S.C. § 3621(b), the BOP has discretion in selecting the place of a federal prisoner's confinement.    Specifically, the statute provides that the BOP "may designate any available penal or correctional facility that meets minimum standards of health and habitability. . . [regardless of] whether [the facility is] maintained by the Federal Government or otherwise. . . , that [BOP] determines to be appropriate and suitable." 18 U.S.C. § 3621(b).  The statute lists five factors which the BOP is required to consider in exercising its discretion: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.  *See* 18 U.S.C. § 3621(b)(1)-(5). Using this discretion, the BOP has the authority to designate a state prison, where a federal prisoner is serving a state sentence, as "the place of confinement" for that prisoner to also serve his federal sentence.  Such an exercise of discretion by the BOP has the effect of making a prisoner's federal sentence run concurrent with his state sentence.

As the Second Circuit has noted, "[t]he law governing prisoners subject to multiple sentences, particularly prisoners subject to multiple state and federal sentences, is hardly a model of

---

[13] Between Petitioner's three habeas petitions, he puts forth a number of variations of what is essentially the same argument: the circumstances surrounding his sentencing proceedings established the concurrent character of the federal sentence.  Among the "circumstances" cited by Petitioner are the following: (1) his presentence report should have been based on evidence--not speculation (docket entry #17, ¶ 17); and (2) the government had to prove the "disputed fact" increasing the sentence, i.e., Petitioner's failure to accept responsibility (docket entry #17, ¶ 19).

clarity." *McCarthy v. Doe*, 146 F.3d 118, 120 (2d. Cir. 1998). With that said, two issues bear

mentioning at the outset. First, the Garland County Circuit Judge's pronouncement that Petitioner's

December 12, 1991 state sentences would be *concurrent* with his November 4, 1991 federal sentence

had no legal force or effect on how the federal sentence would run. *See Hendrix v.* Norris, 81 F.3d

805 (8th Cir. 1996) ("the state court [is not] responsible for the federal court's imposition of a

consecutive sentence: the discretion of a federal sentencing court cannot be limited by a state court's

judgment") (citing *United States v. Adair*, 826 F.2d 1040, 1041 (11th Cir. 1987)); *United States v.*

*Williams*, 46 F.3d 57, 58 (10th Cir. 1995) ("Although the state court attempted to impose a concurrent

sentence, a federal court's determination that a federal sentence run consecutive to a state sentence

is a federal matter which cannot be overridden by a state court provision for concurrent sentencing

on a subsequently-obtained state conviction") (internal citation and quotations omitted).

Second, because Judge Harris's Judgment and Commitment Order is *silent* on whether

Petitioner's federal sentence is to be consecutive or concurrent to any later imposed state sentence,

this Court need not address the question of whether a federal court has the power to designate a

federal sentence to run consecutive or concurrent to a yet-to-be imposed state sentence.[14]   Rather,

---

[14]The circuits are split on this issue. The Eighth Circuit has joined the majority of circuits
holding that a federal court *does* have such power:

> Those circuits that have addressed the issue disagree whether a district court may
> impose a federal sentence to be served consecutively to a yet-to-be-imposed state
> sentence.
>
> * * *
>
> While we are mindful of the concerns discussed by the circuits holding the minority
> view--deference to the Attorney General's authority under separation-of-powers
> principles, and to the state court's authority under comity principles--we are
> persuaded to adopt the majority view. The district court has broad discretion to
> determine whether a sentence should be consecutive or concurrent, *see United States*
> *v. Goldman*, 228 F.3d 942, 943 (8th Cir.2000), *cert. denied*, 531 U.S. 1175 (2001),
> within the constraints of the relevant statute, 18 U.S.C. § 3584. Neither the statute

the question in this case is whether a federal sentence, containing *no expressed intent* on whether it is consecutive or concurrent to a yet-to-be-imposed state sentence, should be deemed *presumptively consecutive* to a later imposed sentence.  Although the Eighth Circuit has not yet addressed this question, other circuits are split on the issue.

In *McCarthy v. Doe*, 146 F.3d 118, 119 (2d Cir. 1998), the Court framed the question as follows:  "Where a sentencing court does not indicate whether a federal sentence should be served consecutively to or concurrently with a not-yet-imposed state sentence, does the Bureau of Prisons have discretion to designate the state correctional facility as the place of confinement for the federal sentence, thus allowing the federal and state sentences to run concurrently?"  The BOP took the position that it had no power to make a *nunc pro tunc* designation, interpreting the last sentence of § 3584(a) to presumptively require the federal sentence to be consecutive with the later imposed state sentence.  The Second Circuit rejected this interpretation and construed the opening sentence of § 3584(a) to apply only to two specific situations: (1) where multiple terms of imprisonment are imposed on a defendant at the same time; or (2) where a term of imprisonment is imposed on a

---

nor the Guidelines directly address whether the district court may impose a federal sentence to be served consecutively to a yet-to-be-imposed state sentence. They certainly do not prohibit it, however; and suggestive of the contrary, the statute encourages consecutive sentences when prison terms are imposed at different times, *see* 18 U.S.C. § 3584(a), and the Guidelines provide that a supervised-release revocation sentence should be consecutive to a sentence imposed for an offense committed while on supervised release, *see* U.S.S.G. § 7B1.3, p.s., comment.(n.4). Construing these provisions, we conclude that the authority to impose such a federal sentence to be served consecutively to a yet-to-be-imposed state sentence falls within the broad discretion granted to the court.

*United States v. Mayotte*, 249 F.3d 797, 798-799 (8th Cir. 2001).

The split of authority among the circuits on this issue is the subject of at least two pending petitions for *certiorari* before the United States Supreme Court.  One arises from the Tenth Circuit, *United States v. Cox*, 125 Fed. App. 973 (10th Cir. 2005) (unpublished decision), and the other from the Fifth Circuit, *Pierce v. Fleming*, 150 Fed. Appx. 344 (5th Cir. 2005) (unpublished decision).

defendant who is already subject to an undischarged term of imprisonment.  Under this construction, the presumption in § 3584(a) does *not* apply to a yet-to-be-imposed state sentence.  The Court succinctly stated its reasoning as follows: :

> The presumptions established by the last two sentences of § 3584(a) must be read in light of this limiting language at the beginning of the section. As defendant was neither subjected to multiple terms of imprisonment at the same time nor was he already subject to his state sentence when his federal sentence was imposed, the presumption that terms of imprisonment imposed at different times run consecutively does not apply to him.

*McCarthy*, 146 F.3d at 121-22.  Thus, the Court remanded the case with instructions for the BOP to review the petitioner's request for a *nunc pro tunc* designation in accordance with the discretion afforded it under 18 U.S.C. § 3621(b).

In *Romandine v. United States*, 206 F.3d 731 (7th Cir. 2000), the Seventh Circuit construed § 3584(a) differently and concluded that the federal sentence must be deemed to be "presumptively consecutive" to the not-yet-imposed state sentence:

> Other courts of appeals are divided on the question whether a district court may require its sentence to be served consecutively to a state sentence that will be imposed in the future. [citing cases]  We join the circuits that answer "no," because § 3584(a) allows the district judge to specify the sequence of service only when sentences are imposed at the same time, or the other sentence is "an undischarged term of imprisonment" to which the defendant is "already subject". But the answer does not matter, and the conflict is illusory, for reasons we have given: the final sentence of § 3584(a) makes the federal sentence presumptively consecutive in all unprovided-for cases, and the effective decision then is made by the Attorney General (or the state judge) rather than the federal judge. We disagree with the reasoning of *McCarthy v. Doe*, 146 F.3d 118, 121-22 (2d Cir.1998), to the extent the second circuit believes that the final sentence of § 3584(a) is limited to those situations also covered by the first sentence (that is, to defendants serving undischarged terms, or other terms imposed on the same occasion). Limiting the final sentence in this way makes it surplusage. It is best read as covering all situations not otherwise provided for. Still, even this disagreement is irrelevant, for the state judge and the Attorney General, exercising power under § 3585(a), have the effective last word. Thus we agree with *McCarthy's* bottom line. The Attorney General has discretion, which she

must exercise without supposing that the district judge's views or the final sentence of § 3585(a) forbid concurrent service. *Accord, Barden v. Keohane*, 921 F.2d 476 (3d Cir.1990).

*Romandine*, 206 F.3d at 738-739.  However, even though the Court in *Romandine* held that 18 U.S.C. § 3584(a) should be construed to make federal sentences presumptively consecutive in "all unprovided-for cases," it recognized that the BOP still has the discretion to make the final determination on that issue.

While not directly addressing the issue of whether a federal sentence that is silent should be deemed to be consecutive or concurrent with a yet-to-be-imposed state sentence, the Court, in *United States v. Mayott*e, 249 F.3d 797, 798-99 (8th Cir. 2001), held that a trial court had the authority to expressly designate a federal sentence to be consecutive to a yet-to-be-imposed state sentence.  In reaching this holding, the Eighth Circuit construed 18 U.S.C. § 3584(a) to "encourage[] consecutive sentences when prison terms are imposed at different times." *Mayotte*, 249 F.3d at 798-99.  Thus, this Court considers it probable that the Eighth Circuit would read the presumption for consecutive sentences in 18 U.S.C. § 3584(a) to apply to the facts in this case.

Finally, in *Barden v. Keohane*, 921 F.2d 476 (3d Cir.1990), a habeas petitioner received a federal sentence while in state custody awaiting trial on state charges. After entry of his guilty plea in state court, the state judge ordered Petitioner's sentence to run concurrent with his federal sentence, which was silent on whether it was to be consecutive or current with the state sentence. To gain credit for his time in state custody, the petitioner requested the BOP to designate the state prison as the place of confinement for his federal sentence. After the BOP *refused to consider the request*, the petitioner filed a § 2241 habeas action in federal court.  In reversing the trial court's denial of habeas relief, the Third Circuit held that, because the BOP had the explicit statutory

authority to grant the requested *nunc pro tunc* designation under 18 U.S.C. § 3621(b), it was required to consider on the merits petitioner's request for such a designation. *Id.* at 122-23.

After the Court's holding in *Barden*, the BOP adopted Program Statement 5160.05, which "provide[s] instructions for the designation of a state institution for concurrent service of a federal sentence." Docket entry #9, Ex. 8 at ¶1. Under this Program Statement, a "designation for concurrent service of sentence will be made only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system." *Id.* at ¶ 8. When presented with a *nunc pro tunc* request where "concurrent service may be appropriate (e.g., the federal sentence is imposed first and there is no order or recommendation regarding the service of the sentence in relationship to the yet to be imposed state term)," the Program Statement requires the BOP to make an inquiry with the federal sentencing court to determine its intent. *Id.* at ¶ 9. "When the original sentencing judge is no longer available and the assigned judge offers no opinion, [BOP] will make a determination based on the particular merits of the case." *Id.*

Under 18 U.S.C. § 3585(a), a federal sentence commences on the date that a defendant is received in federal custody, so that a defendant, like Petitioner, who is in state custody serving a state sentence, ordinarily receives no credit on his federal sentence. However, as indicated previously, the BOP retains the discretion to designate a state institution as the official facility for service of a federal sentence. *See* 18 U.S.C. § 3621(b). Respondents argue that, because the BOP properly exercised its discretion under § 3621(b), in *denying* Petitioner's March 27, 2000 request to designate his federal sentence as running concurrent with his state sentence, his collateral attack on the BOP's decision is without merit.

In contrast, Petitioner relies on the trial court's decision in *Cozine v. Crabtree*, 15 F. Supp.2d 997 (D. Or. 1998), to support his position that the BOP's decision to deny his request for a *nunc pro tunc* designation was "arbitrary and capricious." In *Cozine*, a habeas petitioner received a federal sentence, followed by a state sentence which the judge designated to be concurrent with the federal sentence. After beginning his incarceration in state prison, the petitioner requested the BOP to make a *nunc pro tunc* designation that his federal and state sentences were to be concurrent. Because the federal sentence was silent, the BOP construed § 3584(a) as requiring it to treat the federal sentence as a consecutive sentence. The court in *Cozine* held that: (1) the BOP erroneously interpreted § 3584(a); and (2) the federal sentencing court lacked the authority to order its sentence to run either concurrent or consecutive with the yet-to-be-imposed state sentence that might or might not someday be imposed. *Cozine* at 1006. Thus, the court concluded that the concurrent or consecutive nature of the sentence should have been left for the second sentencing court, which in that case was the state court. *Cozine* at 1006.[15]

The court's decision in *Cozine* is readily distinguishable from the facts in this case. Most importantly, here, the BOP did *not* assume, as it did in *Cozine*, that the silence of the federal sentence automatically rendered it consecutive. Rather, the BOP undertook an investigation into what the sentencing court intended,[16] and whether, in its discretion, the *nunc pro tunc* designation was

---

[15] Importantly, *Cozine* relies on Ninth Circuit law that a federal sentencing court has no power to designate a federal sentence concurrent or consecutive to a yet-to-be-imposed state sentence. *Cozine*, 15 F. Supp 2d at 1006 ("Congress did not vest federal courts with the authority to impose a federal sentence to run consecutive to a state sentence that has not yet been imposed." (*quoting United States v. Clayton*, 927 F.2d 491, 492-93 (9th Cir.1991)). As discussed earlier, the Eighth Circuit has joined other circuits in rejecting this position. *See Mayotte*, 249 F.3d at 798-99.

[16] According to the affidavit of BOP Regional Inmate Systems Administrator Linda Gail Haynes, the BOP: (1) contacted the United States Probation Office, which reviewed Petitioner's

"consistent with the goals of the criminal justice system."

Petitioner also argues that, because Judge Harris denied him a 2-point deduction for acceptance of responsibility, this means that Judge Harris must have intended for the federal sentence to be concurrent with any sentence Petitioner might later receive on the pending state charges. After carefully reviewing the transcript of the sentencing hearing, the Court concludes that Judge Harris said nothing that could be reasonably construed as meaning that he *actually intended* for the federal sentence to run concurrent with Petitioner's yet-to-be-imposed state sentence. Admittedly, Petitioner's argument has some *speculative appeal* because Judge Harris's finding suggests that he *may* have intended for the federal sentence to be concurrent to any sentence on those state charges. However, even "educated speculation" falls well short of the kind of evidence necessary for the Court to find, without guessing, that Judge Harris *actually intended* for the federal sentence to be concurrent, to Petitioner's state sentences.

---

probation file and advised the BOP that there was nothing reflecting that the federal sentence was to run concurrent; and (2) reviewed the federal sentencing hearing transcript which "failed to indicate the federal sentencing court intended that the imposed federal term run concurrent with any other term." (Docket entry #9, Ex. 1, and docket entry #19.) Ms. Haynes added that "[w]hile the transcript contained discussion that pending state cases would either be dismissed or result in the imposition of a concurrent term by the state court if [Petitioner] pled guilty in the federal case, the discussion occurred in the context of whether [Petitioner] was entitled to a federal sentencing benefit for acceptance of responsibility. The transcript of [Petitioner's] federal sentencing included no statement that the federal court desired to defer to the state court as to the manner in which the sentences would be served." *Id.* Of course, the BOP could not obtain any information from the sentencing court because Judge Harris was deceased by the time that Petitioner made his *nunc pro tunc* request. Respondents provide no information on whether there was any input from the "assigned" district court judge.

With respect to the "enhanced" recording of Petitioner's change-of-plea hearing, submitted by Petitioner on March 6, 2006,[17] he argues that a portion of the recording captures a bench conference during which someone comments that the "sentences are to be considered concurrent." According to Petitioner, this comment establishes that Judge Harris "specifically took into account the State sentence and the agreement to run the sentences concurrently."   (Docket entry #24, p.2.) Petitioner has submitted an affidavit from a professional sound engineer, Dale Hawkins, who details the technical steps taken to enhance the recording, which is approximately thirteen minutes in length. (Docket entry #24, Ex. C.)   According to Mr. Hawkins, at approximately 11:25: (1) there is a conversation that is somewhat muffled as if someone placed a hand over a microphone; (2) someone speaking during this portion of the tape can be heard saying something about a "signed document"; and (3) someone can be heard stating "sentences are to be considered concurrent." (Docket entry #24, Ex. C.)

After carefully listening to the recording, the Court does not share Mr. Hawkins's opinion that someone can be heard stating something about a "signed document" or that someone states the "sentences are to be considered concurrent." Even on the "enhanced recording," the bench conference is almost inaudible, and the Court cannot discern who is speaking or what is being said.[18]

---

[17] In some pleadings, Petitioner erroneously references the enhanced tape as a recording of his "sentencing" hearing. However, this tape clearly contains only his change-of-plea hearing, which took place on September 18, 1991.  As previously noted, Judge Shepherd listened to the original version of this recording in ruling on Petitioner's request for *error coram nobis* relief, and could not determine who was speaking or what was said during the crucial "bench conference" during which Petitioner contends the attorneys and Judge Harris discussed and agreed that his federal sentence was to be concurrent with any state sentence. Even on the "enhanced" tape, the Court cannot determine who is speaking or what is being discussed during this bench conference.

[18] The "drop-out" in the audio recording, from 11:25 to 11:42, corresponds to a portion of the change-of-plea hearing transcript indicating a "discussion off the record."  (Change of plea

Although muffled or whispered voices can be heard, the Court cannot make out anything approaching what Petitioner and Mr. Hawkins contend these voices are saying.  At most, someone other than Judge Harris says a word that sounds like "concurrent," but the Court cannot make out any of the words that precede or follow "concurrent."  Certainly, the Court can hear nothing on the enhanced tape which remotely approaches a coherent statement that the federal sentence is to be concurrent with any future sentence that Petitioner might receive on the state charges.

Finally, if such a discussion of the concurrent nature of the federal sentence had, in fact, taken place during this bench conference, it strains credulity to believe that Petitioner and his attorney would not have raised the issue *on the record* during the change-of-plea hearing, or, more importantly, six weeks later during the sentencing hearing.  Judge Shepherd's observation, in denying *coram nobis* relief, is equally pertinent here: "We can think of no reason why a matter as significant as an agreement or understanding that the yet-to-be-imposed federal sentence and a yet-to-be-imposed state sentence would run concurrent with each other would not be discussed and noted in open court on the record."  (W.D. docket entry #73, p.16.)

In considering Petitioner's request that his federal sentence be designated as concurrent to his state sentence, the BOP had no facts in the record from which it could reasonably determine any expression of intent by Judge Harris that Petitioner's federal sentence should run concurrent with any yet-to-be-imposed state sentence.[19]  Thus, the BOP was left to base its decision on Petitioner's

---

hearing Trans. at p. 7.)  This suggests that the alleged discussion of Petitioner's federal sentence being concurrent took place at a bench conference.

[19] *If* there had been evidence of an understanding or agreement that Petitioner's federal sentence was to be concurrent with any state sentence, it would have been strong evidence in favor of the BOP *granting* Petitioner's request for a *nunc pro tunc* designation.  *See*, *Hendrix v. Norris*, 81 F.3d 805 (8th Cir. 1996).

"extensive and serious criminal history, including his conduct while confined." (Docket entry #19, Ex. A. at ¶ 17.) This included convictions for aggravated robbery and theft of property and Petitioner taking a jailer hostage in attempting to escape from custody while he was awaiting the disposition of his state and federal charges. *Id.* In short, there is no evidence that the BOP failed to exercise its discretion in considering Petitioner's request for a *nunc pro tunc* designation or that, in conducting its investigation, it considered an improper factor, or failed to consider a proper factor. Thus, the Court concludes that the BOP gave full and fair consideration to Petitioner's request for a *nunc pro tunc* designation, and that its decision was neither arbitrary nor capricious.[20]

> **B.**     **The Marshals Service, Allegedly Acting For The Attorney General, Designated The ADC As The Institution In Which Petitioner Was To Serve His Federal Sentence.**

According to Petitioner, the United States Marshal erroneously returned him to state custody, following his sentencing, instead of transporting him to the BOP to begin serving his sentence. Petitioner contends that, once Judge Harris pronounced his sentence on November 4, 1991, and remanded him to the custody of the United States Marshal, he immediately should have been deemed to have begun serving his sentence under 18 U.S.C. § 3585(a). Thus, the decision by the Marshals

---

[20]Part of Petitioner's argument in favor of his federal sentence running "concurrent" with his state sentence arises from his having already served fourteen and one-half years of his eighteen-year state sentence, with the prospect of serving an additional ten years and five months, if the federal sentence is deemed to be "consecutive." In considering this argument, two points must be kept in mind. First, at the time Judge Harris imposed his sentence, he had no idea whether Petitioner's state charges might be *nolle prossed* or whether Petitioner might be sentenced on those charges. Second, assuming Arkansas state prisoners comply with certain rules, they receive "good time credit," which generally cuts a state sentence in half. The fact that Petitioner actually served fourteen and one-half years of an eighteen-year sentence strongly suggests that he earned very little "good time credit." If Petitioner had earned all available good time credit, he would have been released from the ADC in approximately nine years. Of course, it is now impossible to know how Judge Harris may have weighed and considered those "possibilities" in imposing his November 4, 1991 sentence.

Service, later that day, to return him to the custody of the Garland County Sheriff, to await the disposition of the pending state charges, was tantamount to the United States Attorney General designating the ADC as the place where Petitioner was to serve his federal sentence. (Docket entry #15, p. 5-6.)

In making this argument, Petitioner relies heavily on *United States v. Croft*, 450 F.2d 1094 (6th Cir. 1971). In that case, the defendant was arrested first by federal authorities on federal charges and then released on bond. While on bond, he was arrested by state authorities on unrelated state charges and taken into state custody.

All of the defendant's subsequent appearances in federal court were pursuant to a writ of habeas corpus *ad prosequendum*. The defendant was later convicted on the federal charges and "sentenced to imprisonment for a period of three years, and immediately committed to imprisonment." *Id.* at 1095. However, rather than being transported to the BOP to begin serving his federal sentence, the Marshals Service returned the defendant to state custody.

The defendant was later convicted in state court, and the state judge specifically designated the defendant's state sentence to be concurrent with his previously imposed federal sentence. The sheriff's office then delivered the defendant to the state prison to begin serving his state sentence.

The Sixth Circuit held that the defendant was "entitled to credit on his federal sentence for the time he was held in the county jail after the federal court's order of commitment."[21] *Id.* at 1099.

---

[21] The federal sentencing court in *Croft denied* the defendant's motion to credit his federal sentence with time served in the state penitentiary, because there was no legal basis for doing so. However, the federal sentencing court was at a loss to understand why the defendant was transported to the state penitentiary following his state conviction, rather than to federal prison: "For some unexplained reason, Croft was then [immediately after the state sentence] sent to [state prison]." *Croft*, 450 F.2d at 1096.

The Court reasoned that the federal sentence began to run "from the date of the order of commitment to the Marshal" and that the failure of the Marshal to execute the federal commitment order "at the time of its issuance, or after the [defendant] had subsequently been sentenced on state charges" did not postpone the beginning of the sentence. *Id.* at 1098; *see also Vaughn v. United States*, 548 F.2d 631, 633 (6th Cir.1977) (limiting *Croft* to circumstances where a state court orders its sentence to run concurrent with a federal sentence).

The facts in *Croft* are distinguishable from those involved in this case in at least two important respects. First, in *Croft*, the defendant was initially arrested by federal authorities on federal charges and taken into federal custody. Although the defendant was later released on a federal bond, the Court noted that "he was still considered as being in the custody of the federal Government; the bail did not divest the federal court of its inherent power to deal with the accused, since he was constructively in the custody of the law." *Croft*, 450 F.2d at 1098-99. Thus, the defendant's subsequent arrest by state authorities on state charges, while he was on federal bond, did *not* divest the federal court of its *primary jurisdiction* over the defendant. Accordingly, the Court held that well established principles of comity were followed when the state sentencing court "recognized the prior jurisdiction of the federal court . . . by making the state's sentence run concurrently." *Croft*, 450 F.2d at 1099.

In this case, it was the state, not the federal government, that had primary jurisdiction over Petitioner, because he was first arrested by state authorities on state charges.[22] Thus, once federal

---

[22] Petitioner argues that he was in state custody solely because he could not make state bond. According to Petitioner, this somehow negated the state's primary jurisdiction over him. However, Petitioner has cited no legal authority to support that proposition and the Court can find none. In contrast, the Court's decision in *Croft* undermines Petitioner's argument to the extent that it holds, under principles of comity, that federal authorities (who first arrested and charged the defendant)

charges were filed against Petitioner, he was "on loan" to federal officials pursuant to the writ of

habeas corpus *ad prosequendum*.  After Petitioner was sentenced by Judge Harris, the United States

Marshal recognized that the state had "primary jurisdiction" over Petitioner and returned him to state

custody pending the resolution of his state criminal charges.  *See United States v. Londono*, 285 F.3d

348, 356 (5th Cir. 2002) ("A writ of habeas corpus *ad prosequendum* is only a 'loan' of the prisoner

to another jurisdiction for criminal proceedings in the receiving jurisdiction."); *Flick v. Blevins*, 887

F.2d 778, 781 (7th Cir. 1989) ("Where the writ expressly requires the return of the prisoner to the

'sending' state, the sending state retains full jurisdiction over the prisoner since the prisoner is only

'on loan' to the prosecuting jurisdiction."); *Wallace v. Hamidullah*, 2006 WL 752851 (D. S.C.

March 22, 2006) ("the state retains primary jurisdiction over the prisoner when a prisoner appears

in court pursuant to a writ of habeas corpus *ad prosequendum* . . . .  Federal custody does not

commence until the state authority relinquishes the prisoner upon satisfaction of the state

obligation").

Second, Judge Harris's Judgment and Commitment Order provides that the Petitioner "is

hereby committed to the custody of the [BOP] to be imprisoned for a term of . . . 125 MONTHS."

(W.D. docket entry #18).  In another section of that Order, Judge Harris checked the box indicating

that "[t]he defendant is remanded to the custody of the United States Marshal."  (W.D. docket entry

#18.)  Because Petitioner was a state prisoner "on loan" to the United States Marshals Service, it

_____

continued to have primary jurisdiction over the defendant, *even though he was free on federal bail*.
*Croft*, 450 F.2d at 1098-99.  The corollary to this holding is that, even if Petitioner had been released
on state bond, his subsequent arrest by federal authorities on the bank robbery charge would *not* have
divested the state of its primary jurisdiction over the Petitioner.  *Cf. United States v. Cole*, 416 F.3d
894, 897 (8th Cir. 2005) (suggesting that, if a state court releases a defendant on bond, it relinquishes
primary jurisdiction over him).  Of course, because Petitioner admits that he could not meet the state
bond, the state never lost "primary jurisdiction" over him.

properly construed Judge Harris's Judgment and Commitment Order as requiring that it return

Petitioner to state custody because all federal proceedings were now concluded.[23]

Finally, in *United States v. Cole*, 416 F.3d 894 (8th Cir. 2005), the Court directly addressed

the question of whether a prisoner's "federal sentence began running at the time he was originally

sentenced [in federal court], but while in state custody." *Cole*, 416 F.3d at 896.  The Court answered

in the negative:

> Cole was not in federal custody at that time-he was in state custody. Cole was only transferred temporarily to the federal authorities for the purpose of being sentenced. If, while under the primary jurisdiction of one sovereign, a defendant is transferred to the other jurisdiction to face a charge, primary jurisdiction is not lost but rather the defendant is considered to be "on loan" to the other sovereign. *See, e.g., United States v. Smith*, 812 F. Supp. 368, 371 (E.D.N.Y.1993). This comports with the principles that ordinarily apply when two separate sovereigns exercise jurisdiction over the same person during the same time period.
>
> As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person. *Thomas v. Brewer*, 923 F.2d 1361, 1365 (9th Cir.1991); *see also United States v. Vann*, 207 F.Supp. 108, 111 (E.D.N.Y.1962) ("The controlling factor in determining the power to proceed as between two contesting sovereigns is the actual physical custody of the accused."). Primary jurisdiction continues until the first sovereign relinquishes its priority in some way. Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: (1) release on bail, (2) dismissal of charges, (3) parole, or (4) expiration of sentence. *Smith*, 812 F. Supp. at 370 n. 2.

*Cole*, 416 F.3d at 896-97.[24]

---

[23]*See* discussion *supra* at footnote 5.

[24]From the time Petitioner was transferred to the United States Marshal on August 13, 1991, until the United States Marshal returned him to state custody on November 4, 1991 (shortly after his federal sentencing), he unquestionably was "on loan" to federal authorities pursuant to a writ of habeas corpus *ad prosequendum*.  Applying the Court's reasoning in *Cole* to these facts, the Court concludes that the BOP should give Petitioner credit toward his federal sentence for the approximately two and one-half months he was in federal custody before being sentenced by Judge Harris on November 4, 1991.

Under 18 U.S.C. § 3585(a), a defendant's federal sentence begins when he "is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." However, a defendant who appears pursuant to a writ of habeas corpus *ad prosequendum* is not "in custody" under 18 U.S.C. § 3585(a). *See United States v. Fermin*, 252 F.3d 102, 108 n.10 (2d Cir. 2001). Thus, Petitioner's federal sentence did *not* begin when the United States Marshal returned him to state authorities on November 4, 1991. Rather, Petitioner's federal sentence will not begin to run until state authorities relinquish jurisdiction over him to the BOP upon the completion of his state sentence. Thus, the Court concludes that Petitioner's second argument is without merit.

### C.      The Alleged *Booker/Blakely* Error In Petitioner's Federal Sentencing.

Finally, Petitioner argues that, during his federal sentencing, Judge Harris "made a finding of fact that the plea agreement entered with the State of Arkansas was entered for the purposes of gaining a more favorable sentence in Federal Court," and that "[t]his required the trial court to make findings of fact that went beyond what Petitioner stated in his pleas statement." Thus, Petitioner contends that Judge Harris, in effect, decided facts "not properly within [his] purview" under *United States v. Booker*, 543 U.S. 220 (2005) and *Blakely v. Washington*, 542 U.S. 296 (2004).

The Court need not reach the merits of Petitioner's final claim because the Eighth Circuit has held that *Booker* and *Blakely* do not apply to criminal convictions that became final before those decisions were announced. *See Never Misses a Shot v. United States*, 413 F.3d 781 (8th Cir.2005) (*per curiam*). Thus, as a matter of law, Petitioner is barred from making this argument in a collateral proceeding.

-33-

### III. Conclusion

The Court finds it troubling that Petitioner's attorney, Mr. Becker, did not request Judge Harris to make a specific finding on whether the federal sentence would run concurrent with any yet-to-be-imposed state sentence. Similarly, after Petitioner received a lengthy state sentence, only approximately one month after Judge Harris had sentenced him to 125 months in federal prison, the Court is at a loss to understand why Mr. Becker did not file a § 2255 petition requesting Judge Harris to clarify whether Petitioner's federal sentence was to run concurrent with his lengthy state sentence - especially in light of the state court judge making it clear that he intended for the state sentence to run concurrent with the federal sentence. Finally, after discovering in 1998 that his federal sentence was *not* running concurrent with his state sentence, the Court is puzzled by Petitioner's failure to file a § 2254 habeas action based on ineffective assistance of counsel.

Petitioner was 31 years old when he was sentenced before Judge Harris. (Docket entry #9, Attachment 10.) After he completes serving his federal sentence, consecutive to his state sentence, Petitioner will emerge from prison at the age of 56, having been locked up for twenty-five years. With nothing in the record suggesting that the victims of Petitioner's second degree battery, attempted escape, and aggravated robbery received any serious injuries, twenty-five years seems to be an awfully long time to spend in prison for those state convictions and a bank robbery in which no one was injured; especially in light of the state sentencing judge making it clear that the state and federal sentences were to run concurrently.

Be that as it may, this Court must be guided by the controlling legal authority governing habeas claims - not general concepts of equity. Due to what may have been ineffective assistance of counsel and Petitioner's own lack of diligence, nothing was done, in a timely fashion, to clarify

whether Judge Harris intended for Petitioner's federal sentence to run concurrent or consecutive with his state sentence.  As a result, almost fifteen years have elapsed and Petitioner finds himself in the difficult position of having only a limited number of legal arguments available to raise in this § 2241 action challenging the BOP's decision that the federal sentence should run consecutive to the state sentence.  For the reasons previously discussed, the Court concludes, as a matter of law, that each of Petitioner's claims is without merit.

IT IS THEREFORE RECOMMENDED that the Petitions for Writ of Habeas Corpus (docket entries #1, #17, and #22) be DENIED, and that this case be DISMISSED, WITH PREJUDICE.

Dated this 16th day of May, 2006.

_____
UNITED STATES MAGISTRATE JUDGE